# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JAMES DOULGERIS,

    Plaintiff and counterclaim defendant,

-vs-                                                                  Case No. 8:08-cr-282-T-24-MAP

UNITED STATES OF AMERICA

    Defendant and counterclaimant.
_____/

## ORDER

This cause comes before the Court on the United States' motion for judgment as a matter of law against Plaintiff James Doulgeris, pursuant to Federal Rule of Civil Procedure 50(b). (Doc. 65.) Plaintiff Doulgeris, appearing pro se, opposes the motion. (Doc. 66.)

## PROCEDURAL HISTORY

This case revolves around whether Plaintiff James Doulgeris can be held liable for the unpaid payroll taxes collected, but not paid over, by International Philanthropic Hospital Foundation d/b/a Granada Hills Community Hospital ("GHCH"), for the tax quarters ending in March 2003 and June 2003.[1] To be held liable for the taxes, Plaintiff 1) must have been a person responsible for paying over the taxes to the government during the relevant fiscal quarters, and 2) must have acted willfully in failing to pay over the taxes. 26 U.S.C. § 6672.

This case was tried before a jury on the dates of June 29th and June 30th, 2009. (*See* Dkt. Nos. 46, 49.) At the close of the Plaintiff's case, the government moved for judgment

---

[1]Just before the commencement of trial, the government dismissed its claim that Plaintiff was liable for the unpaid taxes from the tax quarter ending in September 2003.

as a matter of law, pursuant to Federal Rule of Civil Procedure 50, asking the Court to find that, as a matter of law, Plaintiff was a responsible person who had willfully failed to pay over to the government the funds collected by the hospital for payroll taxes. (Dkt. No. 47.) The Court denied the motion. (Dkt. No. 48.) After both parties had rested, the government renewed its Rule 50 motion. (Dkt. No. 50.) The Court granted the government's motion for judgment as a matter of law as to the issue of whether Plaintiff was a responsible person, finding that as President and CEO of GHCH, vested with the responsibilities incumbent upon those offices during the relevant time period, Plaintiff was a responsible person. (Dkt. No. 51.) The Court charged the jury with determining whether Plaintiff had shown by a preponderance of the evidence that he had not acted willfully in failing to pay over the taxes. The jury was unable to reach a verdict on the issue, and on June 30th the Court declared a mistrial. (Dkt. No. 57.) The government then timely renewed its Rule 50 motion as to the single outstanding issue of willfulness. (Doc. 65.) Plaintiff timely filed his response in opposition thereto. (Doc. 66.)

## FACTS

After experiencing financial hardship, GHCH filed for bankruptcy. (Doc. 60, pp. 97–98.) In January of 2003, GHCH hired Health Care Resource Specialists, Inc., a company owned by Bay Management Group ("BMG"), to help the hospital with its bankruptcy reorganization and to remediate the hospital's financial troubles. (*Id.* at 98, 166; Gov't. Ex. 19.) On January 21st, 2003, BMG appointed Plaintiff as interim president and Chief Executive Officer ("CEO") of the hospital. (*Id.* at 99.) Plaintiff's primary area of vast expertise was in managing the operations, rather than finances, of hospitals in financial

distress. (*Id.* at 97–99.) Mark Jonas, another BMG employee, served as the Chief Financial Officer ("CFO") of the hospital during Plaintiff's tenure at GHCH. Mr. Jonas testified that he made payments to various creditors on behalf of the hospital based on his judgment and sometimes with the input or under the direction of Plaintiff or Philip Rappa, the CEO of BMG. (*Id.* at 223, 226–27, 243.)

It is undisputed that GHCH withheld federal income taxes and social security taxes from the wages and salaries paid to its employees during the tax quarters ending in March 2003 and June 2003. The parties further agree that the hospital then failed to fulfill its legal requirement to turn over to the government the full amount of the funds withheld during that time.

Plaintiff admits that he knew GHCH was delinquent in its payroll taxes when he began his term as interim president and CEO. (Doc. 60, pp. 97–99, 182–83.) There is no dispute that Plaintiff had the authority to draw on the bank accounts of the hospital, including the accounts entitled "payroll" and "taxes." (Gov't. Ex. 225, pp. 10, 14, 22, 33, 44, 57; Doc. 60, pp. 169–75.) In fact, between February and July of 2003, Plaintiff signed checks on behalf of the hospital on 57 separate occasions and totaling at least 2.9 million dollars, while payroll taxes were delinquent. (Doc. 60, p. 176; Gov't. Ex. 26.) Plaintiff claims, and there is no evidence to the contrary, that these were checks that Mr. Jonas, the CFO, had made out and left for Plaintiff to sign while Mr. Jonas was out of the office. (Doc. 60. P. 176, 191–92.) Plaintiff claims that he did not make out the hospital's checks; he only signed them on occasion. (*Id.*) Thus, he claims that he was not actually in control over whom the hospital paid. Instead, financial decisions and payments fell under the authority of Mr. Jonas, who

answered to Mr. Rappa of BMG, rather than to Plaintiff. (*See, e.g.,* Doc. 62, pp. 102–03; Doc. 66, pp. 3–4.)

The Internal Revenue Service ("IRS") determined that Plaintiff was a hospital officer responsible for the payment of funds withheld for payroll taxes, during the period in which GHCH failed to pay over the withheld taxes to the government. (*See, e.g.*, Counterclaim.) Therefore, the IRS held Plaintiff personally liable for the full amount owed. (*See id.*) Plaintiff paid a $100 assessment for each of the quarters for which the IRS deemed him liable for the unpaid taxes. (Compl.) Then, in February of 2008, Plaintiff brought this suit against the United States to recover the assessments he paid and to absolve himself of liability for the remainder of the unpaid taxes. (*See id.*) The United States counterclaimed to reduce the outstanding amount of the unpaid taxes (plus interest) to judgment against Plaintiff. (Counterclaim.)

## **STANDARD OF REVIEW**

During a jury trial, after a party has been fully heard on the issues, the opposing party may move for a judgment as a matter of law as to one or all of those issues. Fed R. Civ. P. 50. The Court may grant the motion if, drawing all reasonable inferences in favor of the non-moving party, *Smith v. United States*, 894 F. 2d 1549, 1552 (11th Cir. 1990), "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party, Fed. R. Civ. P. 50(a). If the Court does not grant the motion before sending the issue(s) to the jury, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion," and the moving

party may renew the motion within ten days of either the entry of judgment or, if the issue is not decided by a verdict, the date on which the jury was discharged. Fed. R. Civ. P. 50(b).

**DISCUSSION**

When a person who is responsible for paying to the government funds withheld for the purpose of payroll taxes, willfully fails to turn those funds over to the government, he may be held personally liable for the amount that is not paid over. 26 U.S.C. § 6672. The government has the burden of demonstrating by a preponderance of the evidence that the person in question was a responsible person under the law; if the government so demonstrates, the burden shifts to the responsible person to show that he did not act willfully in failing to pay over the taxes. *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987).

In this context, a person acts "willfully" if he voluntarily, consciously, and intentionally uses, or causes to be used, funds withheld for payroll taxes for purposes other than the payment of those taxes. *Malloy v. United States*, 17 F.3d 329, 332 (11th Cir. 1994). Willfulness is demonstrated when it is shown that an officer decided to use the money withheld for payroll taxes to pay suppliers or other creditors when he knew that payroll taxes were due and owing to the government. *Id.* Even acting "with *a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government*, such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted," can constitute willful failure to pay. *Id.* (citations omitted) (emphasis in original). Delegation of financial responsibility to another person is insufficient to disprove willfulness. *Mazo v. United States*, 591 F.2d 1151, 1155 (5th Cir. 1979). In

other words, if an officer has a responsibility to pay over taxes to the government, he cannot absolve himself of that responsibility by leaving it for someone else to fulfill. *Hornsby v. Internal Revenue Svc.*, 588 F.2d 952, 953 (5th Cir. 1979).

There is no dispute that Plaintiff was the president and CEO of GHCH during the tax quarters in question. He admits that he knew that the payroll taxes collected from hospital employees had not been turned over to the government in their entirety for the quarters ending in March and June 2003. He acknowledges that he had the authority to make payments on behalf of the hospital. In fact, Plaintiff admits that he signed checks totaling over 2.9 million dollars (*see* Gov't Ex. 26), paying other creditors, rather than the government, while he knew that payroll taxes were delinquent. Thus, he decided to use the money withheld for payroll taxes to pay suppliers or other creditors when he knew that payroll taxes were due and owing to the government.

Further, even if Plaintiff did not make out the checks he signed, his signature was necessary to give the checks value, and thus his signature "cause[d] [the payroll tax funds] to be used . . . for purposes other than the payment of taxes." Significantly, Plaintiff admits that he had the power to directly transfer hospital funds to the government to make payroll tax payments, and that he did so when Mr. Jonas was out of town. (Doc. 60, p. 177.) The fact that Plaintiff had the power to pay the taxes but had generally left financial decisions to Mr. Jonas is insufficient to absolve Plaintiff of his responsibility to see that the taxes were paid.

Based on the facts in evidence, it is clear that Plaintiff willfully enabled hospital funds to be used for purposes other than paying taxes owed to the government while he knew that such taxes were owing and was able to effect their payment. Thus, even making all

inferences in favor of Plaintiff, there is insufficient evidence by which a reasonable jury could find for Plaintiff on the issue of willfulness. Therefore, as a matter of law, Plaintiff was willful in failing to pay over the payroll taxes for the fiscal quarters in question.

## **CONCLUSION**

Accordingly, it is ORDERED AND ADJUDGED that the United States' motion for judgment as a matter of law is GRANTED as to Plaintiff's willfulness. The two legal issues informing the resolution of this case are 1) whether Plaintiff was a person responsible for paying over to the government payroll tax funds collected from hospital employees for the May and June 2003 tax quarters, and 2) whether Plaintiff acted willfully in failing to pay over those funds. Because the court has now ruled for the government as to each issue as a matter of law, the clerk is directed to enter judgment in favor of the United States and against James Doulgeris in the amount of $1,935,204.33.

DONE AND ORDERED this 3rd day of August, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record, and
Pro Se Plaintiff James Doulgeris.